UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

UNITED STATES OF AMERICA,　　　　)
　　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　　)　　　Case No. 1:15-CR-35-TRM-CHS
　　　　　　　　　　　　　　　　　　)
MICHAEL TYRONE WOOD　　　　　　)

## REPORT and RECOMMENDATION

### I. Introduction

Defendant Michael Tyrone Wood moves to suppress evidence of drug trafficking found

at his residence and on his cellphone and statements he made to law enforcement on or about

November 14, 2014 [Doc. Nos. 202 and 204].  He is charged with two counts of felony drug

crimes involving methamphetamine and one count of the federal crime of felon in possession of

a firearm.[1]  Defendant raises two arguments to attack the validity of the search warrant, *to wit*:

(1) Detective Chad Johnson, who provided the affidavit to obtain the search warrant for

Defendant's home, made false statements in his affidavit intentionally or with reckless disregard

for the truth which, if excised from the affidavit, would eliminate the necessary probable cause to

issue the search warrant;[2] and (2) the affidavit as it is written fails to support probable cause as

required by the Fourth Amendment to search his residence.

---

[1] The specific statutes under which Defendant has been indicted are: 21 U.S.C. §§ 841(a)(1) and
(b)(1)(B), 21 U.S.C. § 846, 18 U.S.C. § 2, and 18 U.S.C. § 922(g)(1).
[2] Defendant also argued in his amended motion to suppress [Doc. 204] that Johnson made
material omissions from his affidavit which, if included, would eliminate probable cause to
search.  The undersigned considered this argument in a May 27, 2016 Order [Doc. 366] in which
I concluded under *Franks v. Delaware*, 438 U.S. 154 (1978), that Defendant was not entitled to
an evidentiary hearing for the alleged omissions as well as for some statements found within the
affidavit which Defendant asserted were false. This Report and Recommendation incorporates by
reference my discussion and decision as to what issues raised by Defendant may be considered in
an evidentiary hearing under *Franks v. Delaware*.  I also note that during the May 31, 2016

1

Aside from Defendant's challenges to the validity of the search warrant, Defendant raises the following additional arguments: (1) the manner in which law enforcement entered his home to conduct the search violated his Fourth Amendment rights and, thus, all fruits of the search should be suppressed; (2) Defendant did not voluntarily waive his Fifth Amendment *Miranda* rights and, therefore, all his statements should be suppressed; and (3) Defendant did not give valid consent to search his cellphone and, therefore, all evidence discovered within it should be suppressed pursuant to the Fourth Amendment.

I will divide this Report and Recommendation into two parts. The first part will address the two arguments advanced by Defendant attacking the validity of the search warrant for 735 Long Hollow Road. The second part of this Report and Recommendation will address the three arguments advanced by Defendant attacking the constitutionality of law enforcement's method of entry into Defendant's residence, law enforcement's questioning of Defendant, and the warrantless search of Defendant's cellphone.

## II. Discussion

### A. Part One – The Search Warrant Affidavit

#### *1. Franks v. Delaware Issues*

Defendant asserts there are false statements in Johnson's affidavit which, if excluded, would negate the probable cause to search his residence found in the affidavit. He sought an evidentiary hearing pursuant to *Franks v. Delaware,* 438 U.S. 154 (1978) relating to those alleged false statements.

#### *a. Franks v. Delaware Standards*

---

evidentiary hearing, counsel for both parties stated they had no objection to the parameters for the *Franks* hearing established by the May 27, 2016 Order.

The Supreme Court in *Franks v. Delaware,* 438 U.S. 154 (1978), set forth procedural protections whereby a defendant could obtain a hearing to challenge the accuracy of information provided in an affidavit under certain limited circumstances. "[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Id.* at 155-56; *see also, United States v. Abboud,* 438 F.3d 554, 574 (6th Cir. 2006). In order to obtain such a hearing, the defendant must provide an offer of proof that the affiant included the false statement knowingly, intentionally, or with reckless disregard for the truth. *Abboud,* 438 F.3d at 574; *United States v. Bennett*, 905 F.2d 931, 934 (6th Cir.1990). If the defendant can provide the required offer of proof, he must then demonstrate that, absent the challenged statements, the search warrant affidavit fails to support probable cause. *Abboud,* 438 F.3d at 574; *Bennett*, 905 F.2d at 934. If the defendant can meet both these requirements, he is entitled to a *Franks* hearing. *Id.*

It is important to note in the instant case that, if a *Franks* hearing is permitted as to certain statements, that hearing is not intended to be used as a method to examine and cross-examine the affiant on every statement made in the affidavit to discern "any information potentially contradicting a finding of probable cause." *Mays v. City of Dayton*, 134 F.3d 809, 815 (6th Cir. 1998). Discerning probable cause is not an exercise in proving guilt or innocence, *id.* at 816, and engaging in a mini-trial over a search warrant affidavit presents an impossible burden on "the non-lawyers who normally secure warrants in the heat of a criminal investigation [and who] should not be burdened with the same duty to assess and disclose information as a prosecutor who possesses a mature knowledge of the entire case and is not subject to the time

pressures inherent in the warrant process." *Id.* at 816 (brackets added). Accordingly, I decline the invitation to examine every statement in the affidavit as if it were evidence being offered to prove guilt or innocence at a trial. My *Franks* analysis shall be confined to those specific statements that the Court has decided are the proper subject of the *Franks* hearing.[3]

### b. Contents of the Search Warrant Affidavit

Detective Chad Johnson of the Marion County, Tennessee's Sheriff's Department prepared and swore to the affidavit used to obtain the search warrant for 735 Long Hollow Road, New Hope, Tennessee. The affidavit details a controlled buy of methamphetamine from Defendant, conducted by a confidential informant at Defendant's residence at 735 Long Hollow Road, within 72 hours prior to the issuance of the search warrant. The affidavit contains the following information, summarized below:

- Johnson had extensive experience investigating methamphetamine laboratories and trafficking rings [Search Warrant Affidavit at 1-3, Doc. 188-1].

- Johnson used a confidential informant (CI) to telephone Defendant and arrange a "buy" of an eight-ball of methamphetamine at Defendant's residence.

- Wood instructed the CI to meet him at Wood's residence [*Id.* at 6].

- The CI was outfitted with "covert recording and monitoring equipment" [*Id.*]. Law enforcement gave the CI $300 in "pre-recorded confidential funds" and searched the CI and the CI's vehicle for pre-existing contraband. None was found [*Id.* at 6-7].

- Johnson and other surveillance units followed the CI to Long Hollow Road but "were unable to follow the CI all the way to Wood's residence due to the fact that [sic] it at the end of a dead-end road" [*Id.* at 7].

---

[3] In the instant case, the question as to what constituted a proper subject of the May 31, 2016, hearing was complicated by the need for an evidentiary hearing relating to other matters besides the *Franks v. Delaware* issues. Rather than conduct two hearings, one on the *Franks v. Delaware* issues, and another on the entry into Defendant's residence, the voluntariness of his statements, and the warrantless search of Defendant's cellphone, the undersigned elected to conduct one consolidated hearing.

4

The affidavit further provides in the following numbered paragraphs:

4. Your affiant and other surveillance then monitored the covert transmitter while the CI waited at WOOD's residence for him (WOOD) to arrive home.

5. Once WOOD arrived home he (WOOD) and the CI engaged in about 30 minutes of conversation during which time WOOD sold the CI methamphetamine-ice.

6. The CI then left Wood's residence and surveillance units then followed the CI to [sic] from 735 Long Hollow Road in New Hope, Tennessee back to the original meeting location.

7. At the meeting location your affiant deactivated the covert equipment, retrieved a bag of methamphetamine-ice, and $80 of the original confidential funds from the CI. Base on your affiant's training and experience the contents of the bag appeared to be methamphetamine-ice weighing approximately seven grams.

8. Your affiant the [sic] debriefed the CI about the details of the transaction. The CI stated that they [4] (CI) paid WOOD $220 for one 8 ball (3.5 grams) of methamphetamine-ice and that WOOD fronted them (CI) a second 8 ball (3.5) grams of methamphetamine-ice. The CI stated that WOOD indicated that they (CI) could pay for the second 8 ball at a later date. Your affiant also showed the CI the picture of WOOD'S residence that is attached in exhibit A and they (CI) stated that this is the residence that they went inside of with WOOD and the residence where they (CI) purchased the methamphetamine-ice. The CI also stated that they (CI) observed approximately 4 more bags of methamphetamine-ice that looked the same as the bag of methamphetamine-ice that WOOD sold then (CI) and that these bags were located in the living room area of the residence.

[*Id.* at 7]. Finally, the affidavit states that Johnson has known the CI for approximately two years and, during that time, the CI has provided Johnson with information that has led to the arrest of individuals and their conviction in the United States District Court for the Eastern District of Tennessee for conspiracy to distribute methamphetamine [*Id.*]. The affidavit is dated November 13, 2014 [*Id.* at 8].

---

[4] Johnson testified that use of "they" or "them" in the affidavit was intended to protect the CI's identity by being gender neutral and that "they" or "them" refers to only one person.

<u>*c. Statements at Issue in the Search Warrant Affidavit*</u>

On May 27, 2016, the undersigned entered an order which concluded that Defendant had met the required standard for a *Franks* hearing regarding certain statements in Johnson's affidavit [May 27, 2016 Order, Doc. 366]. The statements which the Court found were appropriate for a *Franks* hearing are as follows:

(1) <u>Prior Knowledge of Confidential Informant</u>. Johnson stated in his affidavit that he had known the CI for two years [Search Warrant Affidavit at 7, Doc. 188-1]. However, in an investigative report, Johnson stated the CI "was made aware" of his identity on November 6, 2014 when Johnson interviewed the CI [Investigative Report, Doc. 354-2]. Defendant's arguments can be summarized as follows:

- The fact that Johnson had to make the CI aware of his identity (or, in other words, identify himself to the CI) suggests that Johnson could not have really known the CI for two years;

- If Johnson had just met the CI on November 6, 2014, then the CI could not have provided Johnson with information leading to the arrest and conviction of individuals involved in drug trafficking during the prior two years;

- This information from the CI, leading to a previous arrest and conviction, is foundational to establishing the credibility and reliability of the CI; and

- The reliability of the CI is essential to probable cause in the affidavit because the only corroboration of drug trafficking at Defendant's residence was the controlled buy which law enforcement did not personally observe.

Further, as discussed later herein, in his motion for a *Franks* hearing Defendant also successfully cast doubt on whether law enforcement was able to contemporaneously monitor the controlled buy using an auditory transmitter. Therefore, I concluded the length of the relationship between Johnson and the CI was a proper subject for the May 31, 2016 evidentiary hearing [May 27, 2016 Order at 7, Doc. 366].

(2) <u>Surveillance of Residence</u>. Johnson stated in his affidavit that surveillance units were unable to follow the CI "all the way" to Defendant's residence because "it was at the end of a dead end road" [Search Warrant Affidavit at 7, Doc. 188-1]. However, a picture of the residence is attached to the search warrant [Exhibit A, Doc. 188-1] suggesting law enforcement could have surveilled the CI entering Defendant's residence if law enforcement had chosen to do so. Given the issues raised about the CI's reliability and police corroboration of the controlled buy using a transmitter, the undersigned found this potential contradiction was an appropriate subject for the May 31, 2016 evidentiary hearing [May 27, 2016 Order at 7, Doc. 366].

(3) <u>Inaudible Covert Recording</u>. In his affidavit, Johnson stated the CI wore "covert recording and monitoring equipment" which law enforcement monitored during the controlled buy [Search Warrant Affidavit at 6-7, Doc. 188-1]. However, in its response brief, the government averred that the recording made of the controlled buy was of such poor quality that it was difficult to decipher the conversation [Response brief at 8, n. 2, Doc. 215]. According to Defendant, the recording of the controlled buy is "inaudible" [Affidavit of Kay Baker ¶ 10, Doc. 354-1]. In the May 27, 2016, Order, I concluded Defendant had made a showing that the statement in the affidavit regarding monitoring of the controlled buy may be false and may have been made knowing that it was false. Given the questions raised about the CI's reliability and credibility, I concluded law enforcement's ability to corroborate the CI's information about the controlled buy using the auditory transmitter had significant bearing on the question of probable cause and was a proper subject for the May 31, 2016 evidentiary hearing [May 27, 2016 Order at 7-8, Doc. 366].

(4) <u>The CI's conversation with Defendant</u>. Defendant contended Johnson's statement in his affidavit that the CI and Defendant engaged in a 30-minute conversation about the purchase

7

of methamphetamine [Search Warrant Affidavit at 7, Doc. 188-1] is either false or made with reckless disregard for the truth. In support of that contention, he argues that the affidavit implies that Johnson obtained this information from the surreptitious recording of the controlled buy, but the recording is inaudible. The affidavit does not explicitly state whether Johnson obtained his information about the conversation between the CI and Defendant from the recording or the transmitter. However, Johnson stated in the affidavit that, after the controlled buy was concluded, he debriefed the CI about the details of the transaction [*Id.* at 7]. Thus, it seems likely Johnson obtained information about the conversation from the CI in the debriefing. Nevertheless, given the questions about the recording, law enforcement's ability to monitor contemporaneously the controlled buy, and the length and nature of Johnson's relationship with the CI, I concluded that Johnson's representation that the CI and Defendant engaged in a 30-minute conversation about the purchase of methamphetamine was an appropriate subject for the *Franks* hearing [May 27, 2016 Order at 8, Doc. 366].[5]

### d. Examination of the Alleged False Statements

On May 31, 2016 and July 7, 2016, the undersigned held an evidentiary hearing, in part, to address the *Franks v. Delaware* issues raised by Defendant. Based on the testimony and evidence presented at that hearing, I make the following findings of fact:

Detective Chad Johnson has been in law enforcement for 17 years. The last 11 years he has been employed with the Marion County, Tennessee, Sheriff's Department investigating drug crimes. Having considered all the evidence presented on both days of the evidentiary hearing

---

[5] It is unlikely that any one of the statements identified above, if removed from the affidavit, would alone be sufficient to strip the affidavit of probable cause. However, if all the statements had to be removed from the affidavit, it would not support probable cause because there would be no indicia of the CI's credibility and the limited police corroboration would have been insufficient. Therefore, the undersigned permitted a *Franks* hearing as to all of them.

and having observed his demeanor throughout the evidentiary hearing, I find Detective Johnson to be a credible witness. He testified as follows:

During the fall of 2014, Johnson was investigating a methamphetamine trafficking ring in Marion County, Tennessee. Johnson had received information from a confidential informant (CI) that Wood was dealing methamphetamine from his residence. This CI is the same confidential informant referenced in Johnson's affidavit used to obtain the search warrant for 735 Long Hollow Road. Johnson had known this CI for two years, and the CI had previously supplied information leading to the arrests and convictions of persons for methamphetamine trafficking in this Court. On November 4, 2016, Johnson interviewed the CI and prepared an Investigative Report [Doc. 354-2]. In this report, Johnson stated the CI "was made aware of TFO[6] Johnson's identity and advised she was not under arrest and free to leave" [Doc. 354-2]. At the May 31, 2016 evidentiary hearing, Johnson explained that, even though he had known the CI for two years, he still identified himself to the CI as law enforcement because he was informally dressed in jeans and a t-shirt, and he wanted to be sure the CI understood he was acting in his official capacity as a law enforcement officer. He further testified he always identifies himself as a law enforcement officer in any interview, and he includes this language in "virtually every" report of such an interview. Thus, I conclude that Johnson did not make a false statement in the affidavit about how long he had known the CI and about the CI's reliability as a confidential informant in the past.

Johnson further testified at the May 31, 2016 evidentiary hearing that, in the fall of 2014, he received information that Defendant was dealing methamphetamine from a residence located at 735 Long Hollow Road. On October 21, 2014, Johnson drove to 735 Long Hollow Road,

---

[6] "TFO" stands for Task Force Officer. In October 2014, Johnson was also serving as a task force officer for the Bureau of Alcohol, Tobacco, Firearms and Explosives.

9

quickly took a picture, and left. The residence is a green and white trailer [Gov. Ex. 1], located in a sparsely populated, heavily wooded, rural area. To reach 735 Long Hollow Road in a vehicle, one must leave Long Hollow Road and proceed to the end of a driveway two-tenths of a mile long. This driveway is the only means by which 735 Long Hollow Road can be accessed by a vehicle. Johnson testified there were only two residences on the long driveway, Defendant's trailer and Defendant's landlord's residence.

Johnson testified he contacted the CI to make a controlled buy of methamphetamine from Defendant at 735 Long Hollow Road, and, sometime between November 9, 2014 and November 13, 2014, the CI made such a controlled buy. According to Johnson, the CI made a recorded phone call to Defendant to make a purchase of methamphetamine, and Defendant advised the CI to meet him at his residence. Johnson searched the CI and her vehicle for contraband and money and found none. He then gave the CI recorded money for the buy and set up the CI's cellphone to be used as a recording device. He also outfitted the CI with a small Bluetooth device to be used as a transmitter, which could be placed inconspicuously somewhere on the body, thereby allowing law enforcement to simultaneously monitor the CI's conversation with Defendant.

Johnson further testified he followed the CI in her black vehicle to the intersection of Long Hollow Road and Defendant's driveway where Johnson observed her vehicle turn off Long Hollow Road and proceed down Defendant's driveway toward Defendant's trailer. Johnson testified he did not follow the CI down the driveway to Defendant's trailer because he did not want to be seen and raise Defendant's suspicions that he (Defendant) was being watched by law enforcement during the buy. Rather, Johnson waited in his vehicle at an abandoned residence located on the intersection of Long Hollow Road and Defendant's driveway where Johnson could monitor that intersection. During the course of the controlled buy, which lasted over an

hour, Johnson rotated positions at the intersection with other officers assisting with surveillance. He was not in a position to actually see the controlled buy, nor was any other officer. According to Johnson, other officers who were monitoring the situation surreptitiously from their vehicles, also refrained from following the CI to Defendant's residence for the same reason as Johnson – to avoid detection. During the entire controlled buy, however, the intersection of Long Hollow Road and the driveway was in constant surveillance by a law enforcement officer. After another officer took up Johnson's position at the abandoned house to observe the Long Hollow Road/driveway intersection, Johnson proceeded to the intersection of Long Hollow Road and Long Island Road about a half mile away.

At the July 7, 2016, hearing, Private Investigator Kay Baker testified on behalf of Defendant. She was employed for approximately eight years as a Special Agent with the Federal Bureau of Investigation and approximately sixteen years as an attorney: eight years in the Attorney General's Office for the State of Georgia; two years for the Georgia ethics commission; and six years as a district attorney in Northwest Georgia. She started her own private investigative firm in 2015.

Baker testified that she drove to 735 Long Hollow Road to view the area. She saw the landlord's house and some outbuildings across from the trailer at 735 Long Hollow Road, and stated that the police could have observed the controlled buy, through a stand of trees, from that vantage point. Johnson's rebuttal testimony indicated that the outbuildings may have been erected after the controlled buy took place. Baker admitted in her testimony that police had valid concerns that the residents of the house might have tipped-off Defendant concerning their undercover operation if police had stationed themselves at the landlord's nearby house or outbuildings.

11

I ascribe credibility to Johnson's explanation that he did not follow the CI to 735 Long Hollow Road because he did not want to raise Defendant's suspicions. There was some evidence adduced at the May 31, 2016, hearing that Johnson knew of a footpath through the woods to the back of Defendant's residence; however, Johnson testified he did not know about that path until sometime after the controlled buy. While Johnson's statement in his affidavit regarding his ability to follow the CI to the end of the driveway was somewhat inartful (i.e., he was "unable" to follow the CI to Defendant's residence), his meaning in the affidavit is clear: he could not have driven up to 735 Long Hollow Road without risking detection. I further conclude that Johnson had no intention to deceive, nor did he demonstrate a reckless disregard for the truth. Moreover, it is not the role of the Court when examining an affidavit for probable cause to consider other avenues of investigation law enforcement *could* have taken before obtaining a search warrant. A *Franks* hearing is not intended to be a critique of the investigation. As will be discussed, the Court assesses an affidavit for probable cause based on the investigation law enforcement *did* conduct as it is set forth in the affidavit. *United States v. Allen*, 211 F.3d 970, 975 (6th Cir.) (*en banc*) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added"), *cert. denied*, 531 U.S. 907 (2000).

Johnson testified the CI had been waiting for the Defendant at Defendant's trailer for about half an hour before Johnson and other officers observed Defendant drive by on Long Hollow Road on his way to the trailer. With Defendant was a passenger who was later identified as Mr. Torro. Johnson testified that, shortly after Defendant passed him, he was able to hear contemporaneously through the Bluetooth device and his cellphone a conversation between a woman and a man whom he believed to be the CI and Defendant, respectively. Most of the conversation was not discernable, but he could make out bits of the conversation.

Approximately an hour and a half after the CI had started down the driveway, the conversation ended, and the CI drove back down the driveway from the trailer to Long Hollow Road where the CI was followed by law enforcement to a debriefing spot on nearby Short Hollow Road. Johnson testified the CI told him during debriefing that Defendant had sold the CI an eight ball of methamphetamine and fronted the CI the money for a second eight ball. The CI provided a layout of the trailer, and reported seeing more methamphetamine inside the trailer. Johnson showed the CI a picture of Defendant's residence (the trailer at 735 Long Hollow Road), and the CI confirmed that this was the residence where the CI bought the methamphetamine from Defendant. After receiving this debriefing from the CI, Johnson returned directly to his office to prepare the affidavit for the search warrant.

During the evidentiary hearing, Defendant played the recording of the controlled buy. The recording was of a very poor quality. Utilizing the courtroom's audio equipment at the evidentiary hearing, little could be ascertained from the recording itself. Johnson testified that, when he listened to the recording using headphones, he could hear some comment about a cow bell and he heard a woman, whom he thought to be the CI, say, "that's a lot of sh*t." Defendant's witness, Kay Baker, testified she could also hear that same statement on the recording. Baker also testified she could not discern any other words. She could only tell that a man and woman were talking for about 30 minutes, and that, both before and after this conversation, there was a period of silence. Johnson testified that, at the time he prepared the affidavit for the search warrant, he had not listened to the recording and did not know it was of such poor quality.

Johnson included statements in the affidavit that he "placed covert recording and monitoring equipment on the CI," and that he "monitored the covert transmitter while the CI

waited at [Defendant's] residence." These statements are correct – even if the auditory quality of both the recording and the simultaneous audio transmission (which Johnson testified was better than the recording) were poor. There are no explicit representations in Johnson's affidavit that the audio transmission or recording was audible, or that either served as the basis for the facts set forth in the affidavit concerning the CI's purchase of methamphetamine from Defendant. To the extent that it could have been inferred from the affidavit that the recording of the controlled buy was audible or that it was the basis for factual representations concerning the drug buy, I find that Johnson had no intention to mislead. Johnson did not listen to the recording until a point in time long after he had prepared his affidavit and obtained the search warrant. Further, as earlier discussed, Johnson did not state in the affidavit that detailed information about the controlled buy was obtained from the recording or the simultaneous audio transmission. Rather, Johnson explicitly stated in paragraph 8 of the affidavit that he obtained information about the controlled buy directly from the CI during a debriefing.

Consequently, I conclude that Johnson did not -- either intentionally or with reckless disregard for the truth -- make false statements in his affidavit. I further conclude that there is no basis to excise any of Johnson's statements from the affidavit. However, as will be discussed, even if all references to the recording and simultaneous auditory transmission were to be excised from the affidavit, it still would support probable cause.

## 2. Probable Cause in the Search Warrant Affidavit

The Fourth Amendment provides no warrant shall issue but upon probable cause, supported by oath or affirmation ...." U.S. Const. amend IV. To establish probable cause to justify a search warrant, an affidavit must set forth facts which indicate "a fair probability exists

14

that evidence of a crime will be located on the premises of the proposed search." *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005) (internal citations omitted); *United States v. Jenkins*, 396 F.3d 751, 760 (6th Cir. 2005). The Court must consider the totality of the circumstances as set out in the four corners of the affidavit. *Illinois v. Gates*, 462 U.S. 213, 230 (1983) (totality of the circumstances standard); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 565 n. 8 (1971) (Court limited to review of affidavit itself); *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*) ("The affidavit is judged on the adequacy of what it does contain, not on what it lacks, or on what a critic might say should have been added.") The court reviewing a search warrant affidavit is to avoid a "grudging or negative attitude" toward a warrant or a "hypertechnical critique" of a warrant and accord the magistrate's determination of probable cause "great deference." *Allen,* 211 F.3d at 973.

Where an affidavit relies upon hearsay information from a confidential informant to supply probable cause, "a court must consider the veracity, reliability, and the basis of knowledge of that information as part of the totality of the circumstances for evaluating the impact of the information." *Frazier*, 423 F.3d at 532 (quoting *United States v. Helton*, 314 F.3d 812, 819 (6th Cir. 2003)). Independent police corroboration of a confidential informant's story is not required to support probable cause unless the affidavit lacks indicia of the informant's reliability, in which case "courts insist that the affidavit contain substantial independent police corroboration." *Frazier*, 423 F.3d at 532; *United States v. Crumpton*, 824 F.3d 593, 616 (6th Cir. June 2, 2016) ("At the same time, independent corroboration of the tip by police is not required when the court is provided assurances that the informant is reliable. In such cases, the affiant need only attest with some detail that the informant provided reliable information in the past.") (internal citations omitted); *United States v. Thomas*, 605 F.3d 300, 307 and 308 n. 5 (6th Cir.

2010) ("when an affidavit indicates the reliability of the informant, the tip *on its own* can be sufficient to support probable cause.") (emphasis original). In addition to attestations of the informant's reliability and credibility by the affiant, "a detailed description of what the informant observed first-hand" is also an indicia of the informant's reliability. *United States v. McCraven*, 401 F.3d 693, 697 (6th Cir. 2005).

Defendant faults the affidavit for failing to explicitly state the CI is "reliable." However, "[a]ffidavits are not required to use magic words, nor does what is obvious in context need to be spelled out …." *Allen*, 211 F.3d at 975. Johnson stated he had known the CI for two years and the CI had provided information leading to the arrest and conviction of individuals for conspiracy to distribute methamphetamine. So, the CI provided information which resulted in the conviction of individuals involved with the same drug (methamphetamine), in the same court as the instant case. Presumably, had the CI's information not been reliable, it would not have resulted in the arrest and conviction of persons for conspiracy to distribute methamphetamine in the earlier case.

Notwithstanding this strong indicia of reliability, Defendant also argues, citing *United States v. Allen,* 211 F.3d 970, 975 (6th Cir. 2000) (*en banc*), *cert. denied*, 531 U.S. 907 (2000), that Johnson's attestation of the CI's reliability is inadequate because Johnson did not give the CI's name to the issuing magistrate and because Johnson did not explain in detail the assistance and information the CI gave law enforcement in the past to help obtain arrests and convictions for methamphetamine violations. First, while it is true that the informant was named to the issuing magistrate in *Allen*, there is no requirement that an affiant reveal the name of his informant to the magistrate to establish the reliability of the informant; doing so is only one factor to consider when determining if the reliability of the informant has been adequately

established. *Crumpton*, 824 F.3d at 616; ("there is no requirement that an informant be named either in the affidavit or the search warrant. Instead, the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable") (internal citations omitted).

Second, there is no requirement that an affiant provide the particulars of an informant's past assistance to police:

> Greene next argues that the affidavit fails to indicate the specific interaction the confidential informant had with law enforcement officials, and therefore, there was insufficient information to support a finding that the confidential informant was reliable. However, Sixth Circuit precedent clearly establishes that the affiant need only specify that the confidential informant has given accurate information in the past to qualify as reliable.

*United States v. Greene,* 250 F.3d 471, 480 (6th Cir. 2001).

While Defendant cites general language from *United States v. Neal*, 577 Fed. Appx. 434, 441-42 (6th Cir. 2014), which he argues supports his position that the CI's reliability is not sufficiently detailed in the affidavit [*See* Defendant's Supplemental Brief at p. 9, Doc. 354], he omits discussion in *Neal* citing with approval at least three cases, the facts of which support a finding of the CI's reliability and veracity in this case:

> This Court has repeatedly held that an affidavit that furnishes details of an informant's track record of providing reliable tips to the affiant can substantiate the informant's credibility, such that other indicia of reliability may not be required when relying on the informant's statements. *See Allen,* 211 F.3d at 976 (no independent corroboration needed where the informant was known to the magistrate and the affiant averred to the informant's reliable tips in previous criminal matters with the same officer over the past five years); *May,* 399 F.3d at 824–25 (*informant whose identity was known to the affiant and who the affiant averred had provided assistance in unrelated drug cases was deemed reliable notwithstanding the affiant's failure to disclose his identity to the magistrate*); *Helton,* 314 F.3d at 821 (*finding statements of an informant may be treated as trustworthy and reliable without corroboration, based on the informant's track record of previously providing information for three searches and sixteen arrests*); *United States v. Moore,* 661 F.3d 309, 313 (6th Cir.2011) (*affirming a finding that an informant was deemed reliable based on (1) the informant having*

*previously provided the affiant information that led to two drug seizures, and (2) the informant's statements that he had personally seen drugs at the place to be searched).*

*Neal*, 577 Fed. Appx. at 441 (emphasis added).

For the foregoing reasons, I conclude the CI's reliability was sufficiently set forth in Johnson's affidavit.

The affidavit also provided corroboration for the controlled buy – even if all references to auditory recording or monitoring equipment are excluded. Johnson checked the CI and the CI's vehicle for money and contraband and found none. Johnson provided the CI with $300 in pre-recorded funds [Search Warrant Affidavit at ¶ 2, Doc. 188-1]. Johnson followed the CI to New Hope, Tennessee, but did not follow the CI to the residence because it was on a dead-end road [*Id.* at ¶ 3]. When the CI left 735 Long Hollow Road, surveillance units followed the CI to the original meeting place [*Id.* at ¶ 6]. At the meeting place, Johnson retrieved a bag of methamphetamine and $80.00 of the original money from the CI [*Id.* at ¶ 7]. Based on his experience and training, Johnson believed the contents of the bag contained about seven grams of methamphetamine [*Id.* at ¶ 7, pp. 5-6].

The affidavit provides additional information directly from the CI to support probable cause. Within 72 hours of November 13, 2014, when the search warrant affidavit was executed, the CI contacted Defendant by cellphone to arrange a purchase of an eight ball of methamphetamine. Defendant instructed the CI to come to his residence [*Id.* at ¶ 1]. After the controlled buy, the CI reported to Johnson that he paid Defendant $220 for an eight ball of methamphetamine [*Id.* at ¶ 8]. The CI also stated Defendant fronted the CI for a second eight ball of methamphetamine. During the transaction, the CI went inside the residence where the CI saw approximately four more bags of methamphetamine in the living room that looked the same

18

as the bag of methamphetamine that Defendant sold to the CI [*Id.*]. Johnson showed the CI a photograph of "Wood's residence that is attached in Exhibit A" [*Id.*]. Exhibit A identifies said residence as 735 Long Hollow Road. The CI confirmed that the residence depicted in the photograph was the residence where the CI purchased the methamphetamine from Defendant [*Id.*]. Based on the totality of the information in the affidavit, I conclude the affidavit supported probable cause to believe that evidence of a crime would be found at 735 Long Hollow Road, New Hope, Tennessee on November 14, 2014.

Finally, Defendant asserts the affidavit is technically insufficient because it explicitly requests a warrant to search a *vehicle*. The penultimate paragraph of the affidavit states:

> Wherefore, as such officer acting in the performance of my duty, I pray the court issue a search warrant authorizing the search of the *vehicle* described in exhibit "A" for evidence of drug trafficking and drug manufacturing ….

[*Id.* at p. 8, emphasis added]. However, Exhibit A attached to the affidavit provides a detailed description of how to reach 735 Long Hollow Road in New Hope, Tennessee which it describes as:

> … a "green and white mobile home which will be at the very end of the gravel driveway. The residence has a built on front and back porch and is surrounded by woods. *This describes the residence and property of Michael WOOD, and the residence to be searched.*

[*Id.*, emphasis added]. Exhibit A also has a photograph of a mobile home with three cars parked in front of it in the driveway.

It is apparent the request for "a search warrant authorizing the search of the vehicle" is a clerical error (or possible confusion on the part of the agent as to whether a mobile home is a vehicle). Regardless, Exhibit A, which is attached to the affidavit and referenced in the affidavit, describes 735 Long Hollow Road as the place to be searched. So, also, does the "Factual Basis supporting probable cause" found at pages 6 and 7 of the

19

affidavit [*Id.* at pp. 6-7]. Moreover, the search warrant itself was issued to search "the residence, curtilage, property, vehicles, and outbuildings located at 735 Long Hollow Road, New Hope, Tennessee …" [Search Warrant, Doc. 188-1]. [7] Thus, despite the apparent error in the affidavit asking for a warrant to search a vehicle, it is obvious from the overall content and context of the affidavit that the request for a search warrant contemplated the residence at 735 Long Hollow Road. Defendant's argument presents no basis to suppress evidence.

B. Part Two: Entry into the Residence, Defendant's Statements, Cellphone Search

During the May 31, 2016, evidentiary hearing for Defendant's motion to suppress, Chad Johnson testified as follows: On November 14, 2016, at approximately 10 a.m., Johnson with ten other law enforcement officers went to 735 Long Hollow Road to execute the search warrant. Before going to search the residence, the officers discussed safety issues including that Defendant had served time in federal prison, carried firearms in his vehicle, and had been involved in domestic violence. Additionally, the trailer was located in a very remote area making it difficult to surveil and determine what activity was occurring there before attempting to execute the search warrant. They also discussed the fact that a window overlooked the front porch and could create a safety issue. Johnson and two other officers walked on a trail through the woods behind the trailer at 735 Long Hollow Road to take positions at the rear of the trailer. As the three officers were walking through the dense vegetation, someone started shooting a

---

[7] Defendant argued in his brief that Johnson had failed to provide the Defendant's street address, 735 Long Hollow Road, in his search warrant affidavit and the search warrant itself. Defendant noted that the places where the street address should be on both documents filed in the Court record were blank. However, during the suppression hearing, the government clarified that, pursuant to its policy, it had redacted the street address on the search warrant and affidavit that it had filed with the Court. Defendant's counsel indicated he was satisfied with this explanation and would not pursue this particular argument further.

firearm in their direction. The officers thought they might be under attack. Because of Defendant's violent background and because he thought someone might be firing at them, Johnson deployed a flashbang device at the rear of the trailer as the other officers approached the front of the trailer from the driveway. The purpose of the flashbang device, described by Johnson as a "loud firecracker," was to divert the attention of the people in the trailer, as well as the person who was shooting, so that the officers could enter the trailer and secure it. After using the flashbang device, some of the officers entered the front door of the trailer without knocking and announcing while others went to locate the shooter.[8] Johnson remained at the rear of the residence to prevent anyone from exiting the back of the trailer.

Defendant, Mr. Torro, and a woman were inside the trailer. Officers found in the trailer methamphetamine, a firearm stored in a case, and a significant amount of loose cash in $20 bills. Johnson entered the residence after the first entry by officers and checked to make sure everyone was safe. He was advised by another officer that Defendant wanted to talk. Defendant was sitting in cuffs on the front porch. Johnson introduced himself to Defendant and told him that they had a search warrant authorizing them to be there. Defendant told Johnson he wanted to cooperate. Johnson obtained a notepad and an audio-recorder from a law enforcement vehicle and returned to Defendant.

At the May 31, 2016, evidentiary hearing, a recording of the conversation between Johnson and Defendant was played. Johnson's voice on the recording is understandable, but Defendant's voice is less audible. Johnson testified that Defendant stated he would like to cooperate by making contact with his methamphetamine supply sources. Johnson asked Defendant if the two people in the trailer would tell others that Defendant had been arrested if

---

[8] Johnson learned after entry was made into the trailer that the gunshots came from a neighbor demonstrating a firearm to a prospective buyer.

Johnson released them. Defendant indicated they would not. Johnson can be heard on the recording giving Defendant his *Miranda* rights and pausing while other officers loosened Defendant's cuffs. Johnson then continued with the *Miranda* rights. Johnson also told Defendant he was "caught" and could help himself by cooperating with law enforcement. The tone of the conversation was polite and calm. Defendant continued to state he wanted to help himself but he was worried about talking in front of other officers. Johnson advised Defendant that he had not brought with him any officers that he did not trust. Defendant admitted to having six ounces of methamphetamine at the residence at that time and stated Torro brought the firearm which police found inside the residence. Defendant then started to discuss his methamphetamine source. Because other officers were still searching the trailer and grounds, Johnson decided to proceed immediately to the Marion County Justice Center (Justice Center) and continue the conversation there.

At the May 31, 2016, evidentiary hearing, the government introduced a video of the interrogation at the Justice Center. Once again, the audio is poor, but the video is clear. Defendant is seen sitting at a desk in a small room in his street clothes. He is not handcuffed, and he had not been booked. Johnson brought him a bottle of water. Johnson testified that he asked Defendant if "he had time to think" and Defendant responded he wanted to do "what he can to help himself." Johnson realized he needed Defendant's cellphone so that Defendant could contact his methamphetamine source to set up a controlled buy. Johnson left the room to retrieve the cellphone which had been seized from Defendant when Defendant was arrested. When Johnson returned, he read Defendant his *Miranda* rights from a form and asked Defendant if he understood them. Defendant responded by asking about his bond. Johnson told Defendant he would speak to the district attorney or the judge to obtain a reasonable bond so that Defendant

could be released to enable him to cooperate.  Defendant then signed the *Miranda* waiver form.

They began discussing Defendant's source and some of Defendant's biggest customers, the real

names of whom Defendant did not know.  Johnson left the office to retrieve a charger for the

cellphone.  When he returned, he allowed Defendant, at Defendant's request, to call his mother

to tell her he was under arrest.  They then discussed how Defendant normally contacts his source

in order to know how to set up a controlled buy in a manner that would not raise any suspicions.

Defendant looked through his phone contacts and attempted to text his source to set up a

controlled buy.  Johnson then took the phone and asked, "what's your password."  Defendant

gave him the password which Johnson entered and then Johnson began to scroll though the

phone looking at contacts.  They discussed various persons identified by Defendant as drug

sources or as Defendant's customers.

Johnson did not specifically tell Defendant that he was going to scroll though his

contacts, pictures, and text messages, and Johnson did not explicitly request Defendant's consent

to do so.  Johnson testified, however, that he believed Defendant consented to this conduct

because he continued to demonstrate his desire to cooperate.  As Defendant noted

methamphetamine sources and contacts in his cellphone, Johnson cross-referenced the names

with photographs of people on his laptop to try to identify them.  Johnson left the room and

returned with a recording device in case they were able to contact the source.  Defendant tried

unsuccessfully to reach his source at a couple of different numbers.  It was late on a Friday

afternoon, and Johnson asked Defendant if they could make the call on Monday because he did

not think he could get other officers to assist with a controlled buy at that time.  Defendant

agreed to the delay; however, Johnson allowed Defendant to text the source in an attempt to set

up a controlled buy.  When the source did not immediately respond, Johnson kept the cellphone

in case the source texted back later. Subsequently, Johnson down-loaded information from Defendant's phone.

### 1. Entry into the Trailer

Defendant asserts that law enforcement's use of a flashbang device and no-knock entry into his residence constituted an unreasonable search and seizure requiring suppression of the evidence found in his trailer.

Law enforcement may enter a residence to execute a search warrant without knocking and announcing their presence if they have reasonable suspicion to believe that evidence would be destroyed or that they would be in danger if they did knock and announce. *Hudson v. Michigan*, 547 U.S. 586, 589-90 (2006); *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995). In the instant case, Johnson had reasonable suspicion to believe he and the other officers would be in grave danger if they knocked and announced. As Johnson was moving through the woods toward the trailer, he heard multiple gunshots and bullets whizzed by him. He was concerned that people were shooting at him and the other officers. I therefore conclude Johnson was justified under the Fourth Amendment in using the flashbang device to distract the occupants of the trailer and to enter without knocking and announcing.

Defendant also argues that the manner in which law enforcement officers entered his trailer violated Tennessee state law, and therefore, suppression of evidence is required. It has long been established that federal law, not state law, applies in determining the admissibility of evidence in federal court. *See Elkins v. United States,* 364 U.S. 206, 223-24 (1960); *Preston v. United States,* 376 U.S. 364, 366 (1964); *United States v. Bennett,* 170 F.3d 632, 635 (6th Cir. 1999). While states may set higher bars for evidence admissibility obtained from a search or seizure, the Fourth Amendment is not interpreted in light of that state's standards. *California v.*

*Greenwood,* 486 U.S. 35, 43 (1988); *see United States v. Wright,* 16 F.3d 1429, 1436 (6th Cir. 1994). Thus, this argument is also unavailing.

Finally, even if the officers' entry into Defendant's residence ran afoul of the Fourth Amendment, it is firmly established that suppression of evidence is not the appropriate remedy; the appropriate remedy would be a federal civil rights claim seeking damages. *Hudson*, 547 U.S. at 593-99; *United States v. Smith*, 526 F.3d 306, 311 (6th Cir. 2008).

### *2. Voluntariness of Defendant's Statements*

Defendant argues his statements made after law enforcement entered his trailer should be suppressed because he was not given *Miranda* warnings and, in the alternative, he was too traumatized by the manner of law enforcement's entry into the trailer to voluntarily waive his *Miranda* rights.

Statements made by a defendant pursuant to express questioning or its functional equivalent while under arrest must be preceded by *Miranda* warnings in order for those statements to be admissible against the defendant. *Dickerson v. United States*, 530 U.S. 428 (2000); *Oregon v. Mathiason*, 429 U.S. 492, 494 (1977); *United States v. Crowder*, 62 F.3d 782, 785 (6th Cir. 1995). In addition, before a person's inculpatory statements can be used against him in a criminal prosecution, even after proper *Miranda* warnings have been given, the government must show that the person validly waived his Fifth Amendment rights. *Miranda*, 384 U.S. at 444; *Crumpton*, 824 F.3d at 606.

"To be valid, waivers of Fifth Amendment rights must be 'voluntarily, knowingly and intelligently' made." *United States v. Montgomery*, 621 F.3d 568, 573 (6th Cir. 2010) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)); *see also Missouri v. Seibert*, 542 U.S. 600, 608-09 (2004); *Dickerson*, 530 U.S. at 433; *Crumpton*, 824 F.3d at 606. The government bears the

25

burden to prove by a preponderance of the evidence that the confession or statements were voluntarily, knowingly, and intelligently given. *Seibert*, 542 U.S. at 608 n. 1; *United States v. Binford,* 818 F.3d 261, 271 (6th Cir. 2016); *United States v. Ostrander*, 411 F.3d 684, 696 (6th Cir. 2005).

Whether a confession was voluntarily and knowingly given involves a two-step inquiry:

> "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986). "Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.* In assessing whether a waiver was knowing and voluntary, "this court looks at the totality of the circumstances concerning whether a defendant's will was overborne in a particular case." *Ledbetter v. Edwards*, 35 F.3d 1062, 1067 (6th Cir. 1994) (internal quotation marks omitted), *cert. denied*, 515 U.S. 1145, 115 S.Ct. 2584, 132 L.Ed.2d 833 (1995). "The relevant question is not whether the 'criminal suspect [knew] and [understood] every possible consequence of a waiver of the Fifth Amendment privilege,' but rather whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time.'" *Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir.) (*en banc*) (quoting *Colorado v. Spring*, 479 U.S. 564, 574, 107 S.Ct. 851, 93 L.Ed.2d 954 (1987)), *cert. denied*, 558 U.S. 850, 130 S.Ct. 125, 175 L.Ed.2d 82 (2009).

*Crumpton*, 824 F.3d at 606–07.

"Coercive police activity is a necessary element for finding that a confession was involuntary." *Abela v. Martin*, 380 F.3d 915, 928 (6th Cir. 2004) (citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986)). Promises of leniency and threats of prosecution may also be forms of coercion which overbear an accused's will and render a confession or statement involuntary. *United States v. Johnson*, 351 F.3d 254, 261 (6th Cir. 2003); *United States v. Wrice*, 954 F.2d 406, 411 (6th Cir. 1992) (*per curiam*).

First, the evidence is unequivocal that Defendant was given his *Miranda* warnings before he was questioned and made incriminating statements. Second, the evidence also indicates that

Defendant made a carefully calculated decision to waive his *Miranda* rights in order to cooperate. Defendant has a prior criminal background and understood that cooperation could assist him. It was Defendant who first broached the subject of cooperation with police and volunteered to cooperate. The tone of the conversation between Defendant and Johnson, as heard on the audio recording, was calm and polite. There was no shouting, no sounds of commotion or indications of coercion on the recording. At one point other officers loosened Defendant's handcuffs. There were no threats and no promises to induce Defendant to talk. Defendant repeated his desire to cooperate to Johnson on at least two other occasions: once after he was mirandized at the trailer and again at the Justice Center. The totality of the evidence indicates Defendant actively and purposefully pursued law enforcement about cooperating, and he knowingly, intelligently, and voluntarily gave his statements to law enforcement after receiving his *Miranda* warnings. I conclude the government has met its burden by a preponderance of the evidence on this issue.

### 3. *The Cellphone Search*

Defendant makes two arguments regarding the search of his cellphone data. First, any consent he may have given was tainted by the illegal method of entry into his trailer and therefore was not valid consent. Second, even if the manner of entry did not taint Defendant's consent to search his cellphone, Johnson's search of Defendant's cellphone far exceeded the scope of Defendant's consent.

In *Riley v. California*, __U.S. __, 134 S.Ct. 2473, 2494 (2014), the Supreme Court determined that, "[m]odern cell phones are not just another technological convenience. With all they contain and all they reveal, they hold for many Americans the privacies of life." (Internal quotations omitted). Concomitantly, the Supreme Court held that, before searching a cellphone

seized incident to an arrest, police must obtain a warrant. *Id.* There are, however, several exceptions to the Fourth Amendment warrant requirement and one of those exceptions is consent. *Georgia v. Randolph*, 547 U.S. 103, 106 (2006). The government bears the burden of demonstrating that consent to search was "freely and voluntarily given," without influence of duress, coercion, or mere submission to authority. *Bumper v. North Carolina,* 391 U.S. 543, 548 (1968); *see also, United States v. Cochrane,* 702 F.3d 334, 342 (6th Cir. 2012); *United States v. Worley*, 193 F.3d 380, 385 (6th Cir.1999); *United States v. Van Shutters,* 163 F.3d 331, 335 (6th Cir.1998). That burden must be met by a preponderance of the evidence with clear and positive testimony. *United States v. Hurst,* 228 F.3d 751, 757 (6th Cir. 2000); *Worley*, 193 F.3d at 385; *Van Shutters*, 163 F.3d at 336. The determination of "whether a consent to a search was in fact 'voluntary' or was the product of duress or coercion ... is a question of fact to be determined from the totality of all the circumstances." *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973); *Cochrane*, 702 F.3d at 343. Moreover, "consent to search need not be express but may be fairly inferred from the context." *Birchfield v. North Dakota*, __U.S.__, 136 S. Ct. 2160, 2185 (2016) (citing *Florida v. Jardines*, 569 U.S. 1, __-__, 133 S. Ct. 1409, 1415-1416 (2013)); *see also, United States v*. Bowser, 505 Fed. Appx. 522 (6th Cir. Nov. 20, 2012) (Officers had implied consent to search cooler and thus suppression of evidence found in cooler was properly denied); *United States v. Ferguson,* 43 F. Supp.3d 787, 790 (W.D. Mich. 2014) (consent to search can be express or implied).

A consensual search should not exceed the scope of the consent given. *Florida v. Jimeno*, 500 U.S. 248, 250 (1992); *United States v. Lucas*, 640 F.3d 168, 175-76 (6th Cir. 2011). "The standard for measuring the scope of a suspect's consent under the Fourth Amendment is that of 'objective' reasonableness – what would the typical reasonable person have understood

by the exchange between the officer and the suspect?" *Lucas*, 640 F.3d at 175. "The scope of a search is generally defined by its expressed object." *Jimeno*, 500 U.S. at 250; *see also, United States v. Jackson*, 468 Fed. Appx. 447, 456 (6th Cir. Feb. 7, 2012).

From the outset of his arrest, Defendant told law enforcement he wanted to cooperate in their drug investigation. In fact, Defendant initiated the conversation with Johnson concerning his cooperation. He was mirandized twice, once at the trailer and once at the police station, and he continued to assert he wanted to cooperate. Johnson asked him at the Justice Center if he had had time to think and, in response, Defendant again indicated he wanted to cooperate. At both the trailer and the Justice Center the conversation between Johnson and Defendant was calm, polite, and even friendly. There were no threats or promises to induce his cooperation. Defendant is an adult with prior experience with law enforcement, and his initiation of cooperation demonstrated that he understood cooperation could benefit him in a prosecution.

At the Justice Center, after Defendant indicated his continued desire to cooperate in the investigation for drug trafficking, Defendant attempted to text his source. Subsequently, while Johnson scrolled through the phone looking at Defendant's contacts, they discussed sources and customers – all as part of Defendant's continued cooperation. At no time did Defendant attempt to withdraw his cooperation or indicate he was uncomfortable or unwilling to continue. On the contrary, he was eager to help.

Based on the totality of the circumstances, I conclude: (1) it was objectively reasonable for Johnson to believe that Defendant consented to the search of his cellphone; and (2) Defendant's consent is implied from his ongoing unequivocal desire to cooperate with Johnson's investigation. The scope of Defendant's consent is limited by the nature of the investigation which Johnson conveyed to Defendant he was conducting – an investigation into

methamphetamine trafficking.  Consequently, I conclude the scope of Defendant's consent to search his cellphone covered Defendant's contacts, contact information, call history, voicemail, pictures and text messages because this information is the very type of information likely to reveal evidence of drug trafficking.[9]

### III. Conclusion

For the reasons stated herein, it is RECOMMENDED that Defendant's motions to suppress evidence of drug trafficking found at his residence and on his cellphone and statements he made to law enforcement on or about November 14, 2014 [Doc. Nos. 202 and 204] be DENIED.[10]

s\ *Christopher H. Steger*
CHRISTOPHER H. STEGER
UNITED STATES MAGISTRATE JUDGE

---

[9] Defendant has not specified whether there is other information found in Defendant's cellphone that he seeks to have suppressed, and, consequently, the undersigned offers no recommendation as to any information in his cellphone besides contacts, contact information, call history, voicemail, pictures and text messages.

[10] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party.  Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure.  Failure to file objections within the time specified waives the right to appeal the District Court's order.  *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general.  *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986).  Only specific objections are reserved for appellate review.  *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).