UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | Case No. 1:15-cr-35 |
| v. ) | |
| ) | Judge Travis R. McDonough |
| MICHAEL TYRONE WOOD ) | |
| ) | Magistrate Judge Christopher H. Steger |
| ) | |

**ORDER**

Defendant Michael Tyrone Wood filed a motion to suppress and an amended motion to suppress the search of his cell phone and other evidence of drug trafficking seized from his residence on November 14, 2014. (Docs. 202, 204.) Magistrate Judge Christopher H. Steger held a hearing on the motions and filed a report and recommendation ("R&R") recommending that the Court deny Defendant's motions to suppress. (Doc. 380.) Defendant timely objected (Doc. 381), and the Government responded (Doc. 382). The Court has conducted a *de novo* review of the Defendant's objections, and for the reasons stated hereafter, the Court will: (1) **OVERRULE** Defendant's objections to the R&R; (2) **ACCEPT** and **ADOPT** the R&R (Doc. 380); and (3) **DENY** Defendant's motions to suppress (Docs. 202, 204).[1]

---

[1] On July 7, 2015, Defendant filed a motion seeking: (1) disclosure of the identity of a confidential informant; (2) a bill of particulars; and (3) to suppress "fruits of the search." (Doc. 131.) The Court addressed some of issues set forth in this motion in its July 29, 2015 order. (Doc. 157.) The remaining issues have been rendered moot by the Defendant's amended motion to suppress. (Doc. 204.) Accordingly, the Court **DENIES AS MOOT** the remainder of Defendant's motion. (Doc. 131.)

## I. BACKGROUND

Defendant, along with several co-defendants, has been charged in a fourteen-count indictment with conspiracy to distribute and possess with intent to distribute methamphetamine, distribution of methamphetamine, aiding and abetting possession of methamphetamine with intent to distribute, and possession of a firearm by a convicted felon. (Doc. 1.) On September 21, 2015, Defendant filed a motion to suppress and an amended motion to suppress. (Docs. 202, 204.) On May 31, 2016, and July 7, 2016, Magistrate Judge Steger held evidentiary hearings, in part, to address Defendant's arguments that evidence seized from his residence should be suppressed because: (1) Detective Chad Johnson, the officer who provided an affidavit in support of the search warrant, made false statements in his affidavit intentionally or with reckless disregard for the truth ("the *Franks* Issues");[2] and (2) the affidavit, as written, fails to provide probable cause as required by the Fourth Amendment to the United States Constitution.

In his affidavit, Detective Johnson swore to the following facts as the basis for seeking a warrant to search Defendant's residence:

1. Within the past 72 hours your affiant utilized a Confidential Informant (CI) to make a controlled purchase of methamphetamine-ice from Michael Tyrone Wood "WOOD"[.] The CI contacted WOOD via cell phone in order to arrange the purchase of an 8-ball (approximately 3.5 grams). During the call WOOD instructed the CI to come meet him (WOOD) at his (WOOD's) residence.

2. Your affiant then provided the CI with $300 in pre-recorded confidential funds and placed covert recording and monitoring equipment on the CI. The CI and the vehicle that the CI was traveling in were then searched for pre-existing contraband with negative results.

3. Your affiant and other surveillance units then followed the CI to New Hope, Tennessee. Surveillance units were unable to follow the CI all the way to WOOD's residence due to the fact that it [was] at the end of a dead end road.

---

[2] As Magistrate Judge Steger explained in his R&R, *Franks v. Delaware*, 438 U.S. 154 (1978), permits a defendant to obtain a hearing to challenge the accuracy of information provided in an affidavit offered in an effort to obtain a search warrant under certain circumstances. (*See* Doc. 380, at 3.)

4. Your affiant and other surveillance then monitored the covert transmitter while the CI waited at WOOD's residence for him (WOOD) to arrive home.

5. Once WOOD arrived home he (WOOD) and the CI engaged in about 30 minutes of conversation during which time WOOD sold the CI methamphetamine-ice.

6. The CI then left WOOD's residence and surveillance units then followed the CI to from [sic] in New Hope, Tennessee back to the original meeting location.

7. At the meeting location your affiant deactivated the covert equipment, retrieved a bag of methamphetamine-ice, and $80 of the original confidential funds from the CI. Based on your affiant's training and experience the contents of the bag appeared to be methamphetamine-ice weighing approximately seven grams.

8. Your affiant the[n] debriefed the CI about the details of the transaction. The CI stated that they (CI) paid WOOD $220 for one 8 ball (3.5 grams) of methamphetamine-ice and that WOOD fronted them (CI) a second 8 ball (3.5 grams) of methamphetamine-ice. The CI stated that WOOD indicated that they (CI) could pay for the second 8 ball at a later date. Your affiant also showed the CI the picture of WOOD's residence that is attached in exhibit A and they (CI) stated that this was the residence that they went inside of with WOOD and the residence where they (CI) purchased the methamphetamine-ice. The CI also stated that they (CI) observed approximately 4 more bags of methamphetamine-ice that looked the same as the bag of methamphetamine-ice that WOOD sold them (CI) and that these bags were located in the living room area of the residence.

9. Your affiant has known the above mentioned CI for approximately two year[s]. During those two years the CI has provided your affiant with information that has led to the arrest and conviction of individuals involved in a conspiracy to distribute methamphetamine. These convictions occurred in the United States District Court for the Eastern District of Tennessee.

(Doc. 188-1, at 6–8.)

At the May 31, 2016, and July 7, 2016, hearings, Magistrate Judge Steger also heard evidence in connection with Defendant's arguments that evidence seized from his residence should be suppressed because: (1) the manner in which law enforcement entered his home violated his Fourth Amendment rights; (2) he did not voluntarily waive his Fifth Amendment

*Miranda* rights;[3] and (3) law enforcement violated his Fourth Amendment rights by searching his cell phone without his consent.

As it relates to law enforcement's search of Defendant's residence, his statements to law enforcement, and the search of his cell phone, Magistrate Judge Steger's R&R summarized the evidence as follows:

> During the May 31, 2016, evidentiary hearing for Defendant's motion to suppress, Chad Johnson testified as follows: On November 14, 2016, at approximately 10 a.m., Johnson with ten other law enforcement officers went to 735 Long Hollow Road to execute the search warrant. Before going to search the residence, the officers discussed safety issues including that Defendant had served time in federal prison, carried firearms in his vehicle, and had been involved in domestic violence. Additionally, the trailer was located in a very remote area making it difficult to surveil and determine what activity was occurring there before attempting to execute the search warrant. They also discussed the fact that a window overlooked the front porch and could create a safety issue. Johnson and two other officers walked on a trail through the woods behind the trailer at 735 Long Hollow Road to take positions at the rear of the trailer. As the three officers were walking through the dense vegetation, someone started shooting a firearm in their direction. The officers thought they might be under attack. Because of Defendant's violent background and because he thought someone might be firing at them, Johnson deployed a flashbang device at the rear of the trailer as the other officers approached the front of the trailer from the driveway. The purpose of the flashbang device, described by Johnson as a "loud firecracker," was to divert the attention of the people in the trailer, as well as the person who was shooting, so that the officers could enter the trailer and secure it. After using the flashbang device, some of the officers entered the front door of the trailer without knocking and announcing while others went to locate the shooter. Johnson remained at the rear of the residence to prevent anyone from exiting the back of the trailer.
>
> Defendant, Mr. Torro, and a woman were inside the trailer. Officers found in the trailer methamphetamine, a firearm stored in a case, and a significant amount of loose cash in $20 bills. Johnson entered the residence after the first entry by officers and checked to make sure everyone was safe. He was advised by another officer that Defendant wanted to talk. Defendant was sitting in cuffs on the front porch. Johnson introduced himself to Defendant and told him that they had a search warrant authorizing them to be there. Defendant told Johnson he wanted to cooperate. Johnson obtained a notepad and an audio-recorder from a law enforcement vehicle and returned to Defendant.

---

[3] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

At the May 31, 2016, evidentiary hearing, a recording of the conversation between Johnson and Defendant was played. Johnson's voice on the recording is understandable, but Defendant's voice is less audible. Johnson testified that Defendant stated he would like to cooperate by making contact with his methamphetamine supply sources. Johnson asked Defendant if the two people in the trailer would tell others that Defendant had been arrested if Johnson released them. Defendant indicated they would not. Johnson can be heard on the recording giving Defendant his *Miranda* rights and pausing while other officers loosened Defendant's cuffs. Johnson then continued with the *Miranda* rights. Johnson also told Defendant he was "caught" and could help himself by cooperating with law enforcement. The tone of the conversation was polite and calm. Defendant continued to state he wanted to help himself but he was worried about talking in front of other officers. Johnson advised Defendant that he had not brought with him any officers that he did not trust. Defendant admitted to having six ounces of methamphetamine at the residence at that time and stated Torro brought the firearm which police found inside the residence. Defendant then started to discuss his methamphetamine source. Because other officers were still searching the trailer and grounds, Johnson decided to proceed immediately to the Marion County Justice Center (Justice Center) and continue the conversation there.

At the May 31, 2016, evidentiary hearing, the government introduced a video of the interrogation at the Justice Center. Once again, the audio is poor, but the video is clear. Defendant is seen sitting at a desk in a small room in his street clothes. He is not handcuffed, and he had not been booked. Johnson brought him a bottle of water. Johnson testified that he asked Defendant if "he had time to think" and Defendant responded he wanted to do "what he can to help himself." Johnson realized he needed Defendant's cellphone so that Defendant could contact his methamphetamine source to set up a controlled buy. Johnson left the room to retrieve the cellphone which had been seized from Defendant when Defendant was arrested. When Johnson returned, he read Defendant his *Miranda* rights from a form and asked Defendant if he understood them. Defendant responded by asking about his bond. Johnson told Defendant he would speak to the district attorney or the judge to obtain a reasonable bond so that Defendant could be released to enable him to cooperate. Defendant then signed the *Miranda* waiver form. They began discussing Defendant's source and some of Defendant's biggest customers, the real names of whom Defendant did not know. Johnson left the office to retrieve a charger for the cellphone. When he returned, he allowed Defendant, at Defendant's request, to call his mother to tell her he was under arrest. They then discussed how Defendant normally contacts his source in order to know how to set up a controlled buy in a manner that would not raise any suspicions. Defendant looked through his phone contacts and attempted to text his source to set up a controlled buy. Johnson then took the phone and asked, "what's your password." Defendant gave him the password which Johnson entered and then Johnson began to scroll though the phone looking at contacts. They discussed various persons identified by Defendant as drug sources or as Defendant's customers.

5

> Johnson did not specifically tell Defendant that he was going to scroll though his contacts, pictures, and text messages, and Johnson did not explicitly request Defendant's consent to do so. Johnson testified, however, that he believed Defendant consented to this conduct because he continued to demonstrate his desire to cooperate. As Defendant noted methamphetamine sources and contacts in his cellphone, Johnson cross-referenced the names with photographs of people on his laptop to try to identify them. Johnson left the room and returned with a recording device in case they were able to contact the source. Defendant tried unsuccessfully to reach his source at a couple of different numbers. It was late on a Friday afternoon, and Johnson asked Defendant if they could make the call on Monday because he did not think he could get other officers to assist with a controlled buy at that time. Defendant agreed to the delay; however, Johnson allowed Defendant to text the source in an attempt to set up a controlled buy. When the source did not immediately respond, Johnson kept the cellphone in case the source texted back later. Subsequently, Johnson downloaded information from Defendant's phone.

(Doc. 380, at 20–24.)

On September 20, 2016, Magistrate Judge Steger entered his R&R, recommending that Defendant's motions to suppress be denied (Doc. 380), and on October 4, 2016, Defendant filed objections to the R&R (Doc. 381). Defendant's objections to Magistrate Judge Steger's R&R are now ripe for review.

## II. STANDARD OF REVIEW

This Court must conduct a *de novo* review of those portions of the R&R to which objections are made. 28 U.S.C. § 636(b)(1)(C). *De novo* review does not, however, require the district court to rehear witnesses whose testimony has been evaluated by the magistrate judge. *See United States v. Raddatz*, 447 U.S. 667, 675–76 (1980). The magistrate judge, as the factfinder, has the opportunity to observe and hear the witnesses and assess their demeanor, putting him in the best position to determine credibility. *Moss v. Hofbauer*, 286 F.3d 851, 868 (6th Cir. 2002); *United States v. Hill*, 195 F.3d 258, 264–65 (6th Cir. 1999). A magistrate judge's assessment of witnesses' testimony is therefore entitled to deference. *United States v. Irorere*, 69 F. App'x 231, 236 (6th Cir. 2003); *see also United States v. Navarro-Camacho*, 186

6

Case 1:15-cr-00035-TRM-CHS   Document 386   Filed 10/31/16   Page 6 of 13   PageID #: 2567

F.3d 701, 705 (6th Cir. 1999).

### III. ANALYSIS

#### *a. The Franks Issues*

As it relates to the validity of the search warrant, Defendant's primary objection to the R&R is Magistrate Judge Steger's finding that Detective Johnson was a credible witness. (Doc. 381, at 2–12.) Defendant argues that inconsistent testimony elicited from Johnson at the evidentiary hearings casts so much doubt as to Johnson's truthfulness that Magistrate Judge Steger should have found that Johnson's affidavit included false statements made intentionally or with reckless disregard for the truth. Specifically, Defendant points to the following inconsistencies:

1. He departed from a DEA taskforce assignment after engaging in a relationship with a confidential informant who was the wife/girlfriend of a person under investigation in a different case;

2. In a November 6, 2014 interview report, he indicated that he made his "identity" known to a confidential informant providing information on Defendant, but in the search warrant affidavit claimed he had known the informant for over two years;

3. He failed to include in his search warrant application that his confidential informant was a methamphetamine user and seller;

4. With regard to a recorded call made by the confidential informant to Defendant, Johnson could not identify any words in the call indicative of a drug transaction;

5. He testified that he witnessed Defendant driving up the road to his residence before the drug transaction referenced in the search warrant application, but did not include that fact in his search warrant application, his investigative report, or his notes;[4]

6. He testified and included in his search warrant application that he was able to monitor the confidential informant's conversation with Defendant through a Bluetooth device, but the contemporaneously made recording of the conversation was inaudible; and

7. Despite referencing that he monitored and recorded the conversation between the confidential informant and Defendant in the search warrant application, he testified that

---

[4] Defendant also argues that this fact is troubling given that Johnson testified that he did not see the confidential informant actually go down this road and arrive at Defendant's residence.

> he relied upon what the confidential informant told him in a debriefing session as the basis for the statements in his search warrant application that the Defendant sold the confidential informant methamphetamine.

(*Id*.)

After conducting a *de novo* review of the record, including Johnson's testimony and the affidavit offered in support of the search warrant application, the Court finds no reason to reject Magistrate Judge Steger's finding that Johnson was a credible witness and that Johnson did not make false statements in his affidavit intentionally or with reckless disregard for the truth. As Magistrate Judge Steger noted in his R&R, Johnson provided testimony at the evidentiary hearings explaining the basis for each of the sworn statements Defendant now challenges. For example, Johnson explained that referencing making his "identity" known to the confidential informant in his interview report was not inconsistent with knowing the confidential informant for more than two years. Specifically, Johnson testified that he regularly includes such a statement in interview reports because he often wears plain clothes, and it is necessary to remind the individuals he is interviewing that he is a law enforcement officer. Similarly, Johnson testified that although he monitored and recorded the confidential informant's conversations with Defendant, he also conducted a debriefing session after the transaction with the criminal informant in which the criminal informant detailed the drug transaction with Defendant. The mere fact that Johnson's affidavit references a recording later found to be inaudible, or that Johnson may not have been able to hear the confidential informant's conversations with the Defendant in real time, does not necessarily mean information gathered during the subsequent debriefing session lacks an appropriate factual basis.

Additionally, Magistrate Judge Steger arrived at his conclusion that Johnson did not make any false statements in his affidavit intentionally or with reckless disregard for the truth after carefully listening to Johnson's testimony, including testimony about the alleged

8

inconsistencies highlighted by Defendant. Magistrate Judge Steger was in the best position to evaluate Johnson's credibility, based on the totality of his testimony. *See Irorere*, 69 F. App'x at 236; *Navarro-Camacho*, 186 F.3d at 705. Accordingly, because the Court agrees with Magistrate Judge Steger's finding that Johnson is a credible witness and that he did not make false statements in his affidavit intentionally or with reckless disregard for the truth, Defendant's objections as to Magistrate Judge Steger's R&R regarding the *Franks* Issues are **OVERRULED**.

### b. *Probable Cause*

Defendant next objects to Magistrate Judge Steger's determination that the search warrant affidavit provided sufficient facts to support a finding of probable cause. (Doc. 381, at 12–16.) Specifically, Defendant challenges Magistrate Judge Steger's finding that the affidavit contained sufficient indicia that the confidential informant was reliable. "To demonstrate probable cause to justify the issuance of a search warrant, an affidavit must contain facts that indicate 'a fair probability that evidence of a crime will be located on the premises of the proposed search.'" *United States v. Crumpton*, 824 F.3d 593, 615 (6th Cir. 2016) (quoting *United States v. Frazier*, 423 F.3d 526, 531 (6th Cir. 2005)). When an affidavit relies on information provided by a confidential informant, the Court must consider "the veracity, reliability, and the basis of knowledge for that information as part of the totality of the circumstances for evaluating the impact of that information." *Id*. "While independent corroboration of a confidential informant's story is not a *sine qua non* to a finding of probable cause, in the absence of any indicia of the informant's reliability, courts insist that the affidavit contain substantial independent police corroboration." *Id*. However, "independent corroboration of the tip by police is not required when the court is provided with assurances that the informant is reliable." *Id*. (quoting *United States v. Thomas*, 605 F.3d 300, 307 (6th Cir. 2010)). "In such

9

cases, the affiant need only attest 'with some detail' that the informant provided reliable information in the past." *Id*. (quoting *Thomas*, 605 F.3d at 307).

Here, the Court agrees with Magistrate Judge Steger's well-reasoned finding that the search warrant affidavit contained sufficient indicia that the confidential informant was reliable and, thus, his finding that the search warrant application was supported by probable cause. Johnson's affidavit stated that he has known the confidential informant for approximately two years and that information provided by the confidential informant has previously led to the arrest and conviction of individuals involved in a conspiracy to distribute methamphetamine in the Eastern District of Tennessee. The affidavit also details a controlled buy executed by the confidential informant at the location to be searched, including sworn statements that Johnson: (1) checked the confidential informant for contraband before the controlled buy; (2) provided the confidential informant with pre-recorded funds; (3) followed the confidential informant to a location near the location to be searched; and (4) subsequently retrieved methamphetamine and some of the pre-recorded funds from the confidential informant after her meeting with Defendant. These sworn statements provide sufficient indicia of reliability of the confidential informant and, thus, provide sufficient facts to support a finding of probable cause. Accordingly, Defendant's objections as to Magistrate Judge Steger's R&R regarding the existence of probable cause are **OVERRULED**.

### c. *Entry onto Defendant's Residence, his Statements, and Search of His Cell Phone*

Defendant next objects to Magistrate Judge Steger's findings that: (1) entry into his residence was reasonable and did not violate the Fourth Amendment to the United States Constitution; (2) he voluntarily gave statements to law enforcement after receiving *Miranda*

warnings; and (3) he consented to law enforcement's search of his cell phone. (Doc. 381, at 16–19.)

With regard to law enforcement's entry into his residence, Defendant argues that law enforcement conducted an unreasonable search by using a flashbang device and performing a no-knock entry into his residence. However, as Magistrate Judge Steger correctly noted in his R&R, and as Defendant now concedes, even if law enforcement's use of the flashbang device and no-knock entry was unreasonable, he would not be entitled to suppression of the evidence uncovered as a result of the search. *See, e.g.*, *Hudson v. Michigan*, 547 U.S. 586 (2006); *United States v. Smith*, 526 F.3d 306, 311 (6th Cir. 2008) (holding that "if officers violate the knock-and-announce rule in the course of executing a search warrant, the victim may file a § 1983 action for money damages but may not suppress the evidence because that remedy does not further the interests served by the knock-and-announce rule"). Accordingly, Defendant's objections as to the reasonableness of the search performed by law enforcement at his residence are **OVERRULED**.

Defendant also objects to the Magistrate Judge's finding that his statements to law enforcement were voluntary. Although Defendant concedes that he received *Miranda* warnings, he argues that his statements to law enforcement were not voluntary because law enforcement used a flashbang device "to distract him" upon entry into his home and because "he was promised a low bond" to induce him to give a statement. The record, however, is devoid of any evidence suggesting that use of the flashbang device impaired Defendant's ability to give a voluntary statement or that law enforcement made any promise of a low bond. As referenced in his R&R, Magistrate Judge Steger listened to audio of Defendant's statement given at his house and watched a video recording of his subsequent statement at the Justice Center and concluded

that there was no evidence to suggest coercion or promises of leniency. After listening to the audio recording and watching the video recording of Defendant's statements, the Court agrees with Magistrate Judge Steger's finding that Defendant's statements to law enforcement were made voluntarily. Defendant's objections to the R&R as to the voluntariness of his statements to law enforcement are, therefore, **OVERRULED**.

Finally, Defendant objects to Magistrate Judge Steger's finding that he consented to law enforcement's search of his cell phone. Defendant argues that, because Detective Johnson never explicitly asked Defendant for consent to search his cell phone, Defendant could not have given knowing and voluntary consent to law enforcement's search. The Court, however, agrees with Magistrate Judge Steger's finding that Defendant consented to the search of his cell phone. *United States v. Bowser* is instructive. 505 F. App'x 522 (6th Cir. 2012). In *Bowser*, officers searched a cooler after the defendant indicated a willingness to cooperate and after he "moved his desk chair, pulled the cooler out from under the desk, and pushed it over to [the officer]." *Id.* at 523–24. In affirming the district court's denial of the defendant's motion to suppress marijuana found in the cooler based on the officers' warrantless search, the United States Court of Appeals for the Sixth Circuit held that "[t]he district court was not clearly erroneous in finding that, by his words and actions, [the defendant] voluntarily consented . . . to a search of the cooler," even though the officers never explicitly asked the defendant for permission to search it. *Id*.

Here, like the defendant in *Bowser*, Defendant's conduct and actions support Magistrate Judge Steger's finding that he consented to search of his cell phone. As seen in the video recording of his interview at the Justice Center, Defendant indicated that he wanted to cooperate and attempted to text his source of supply using his cell phone. Defendant then gave his phone

to Johnson and permitted Johnson to scroll though his list of contacts as they discussed sources and customers. In fact, at one point while Johnson possessed the cell phone, Johnson asked for the password needed to access the cell phone, and Defendant gave it to him. Based on Defendant's conduct, the Court agrees with Magistrate Judge Steger's determination that it was objectively reasonable for Johnson to believe that Defendant consented to the search of his cell phone. Accordingly, Defendant's objections as to the search of his cell phone are **OVERRULED**.

## IV. CONCLUSION

For the reasons stated herein, Defendant's objections to the R&R are **OVERRULED**. The Court **ACCEPTS** and **ADOPTS** the R&R (Doc. 380) and **DENIES** Defendant's motions to suppress (Docs. 202, 204). Additionally, the Court **DENIES AS MOOT** the issues not previously addressed from Defendant's July 7, 2015 motion. (Doc. 131.)

**SO ORDERED.**

/s/*Travis R. McDonough*
**TRAVIS R. MCDONOUGH**
**UNITED STATES DISTRICT JUDGE**